UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 5:22-CR-78-KKC-MAS-1 |
| v. ) | |
| ) | |
| JACOB TYLER HENSLEY, ) | |
| ) | |
| Defendant. ) | |

**DETENTION OPINION & ORDER**

The Indictment alleges that Defendant Jacob Hensley ("Hensley") possessed with intent to distribute fifty grams or more of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and possessed firearms in furtherance of a drug trafficking crime in violation of 21 U.S.C. § 924(c)(1)(A). [DE 1]. The United States orally sought detention under 18 U.S.C. § 3142(f)(1)(C) and (E), [DE 8], and the Court conducted a detention hearing on August 15, 2022. [DE 11]. Per Federal Rule of Appellate Procedure 9(a) and for the reasons discussed in this opinion, the Court grants the United States' motion for detention.

**I.   BRA FRAMEWORK**

Based on the charges, a detention presumption arises under the BRA as to both nonappearance and danger risk. 18 U.S.C. § 3142(e)(3)(A). The BRA and *United States v. Stone*, 608 F.3d 939, 945–46 (6th Cir. 2010) frame the resulting inquiry. The presumption imposes on the defendant a threshold "burden of production"; in response, "he must introduce at least some evidence" that he poses neither a flight nor a danger risk. *Stone*, 608 F.3d at 945; *see also United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986) (imposing a responsive burden on the

defendant to produce "some evidence that he will not flee or endanger the community if released"); *United States v. Hernandez*, No. 1:02-CR-006, 2002 WL 1377911, at *2 (E.D. Tenn. Feb. 27, 2002) (requiring the defendant to "produc[e] probative, credible evidence to rebut the presumption and support his contention that he will appear . . . and [that] he does not pose a danger"). The production burden "is not heavy," and the Government retains the ultimate burden of persuasion. *Stone*, 608 F.3d at 945. An unrebutted presumption requires detention. A rebutted presumption remains a pro-detention statutory factor. *See id.* ("The presumption remains as a factor because it . . . reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial.").

Where a defendant rebuts the presumption, the burden shifts back to the United States. Detention premised on nonappearance requires preponderant evidence that no conditions can reasonably assure the defendant's future appearance. *See, e.g.*, *United States v. Patriarca*, 948 F.2d 789, 793 (1st Cir. 1991); *United States v. Curry*, No. 6:06-CR-82-DCR, 2006 WL 2037406, at *6 (E.D. Ky. July 18, 2006). Danger-based detention, however, demands clear and convincing evidence that no combination of conditions will reasonably ensure community safety. 18 U.S.C. § 3142(f). The analyses are distinct. Conditions that sufficiently target nonappearance risk may not adequately address danger potential. *See United States v. Mercedes*, 254 F.3d 433, 436-37 (2d Cir. 2001). Further, condition effectiveness inherently hinges on a defendant's predicted good faith compliance. *See United States v. Tortora*, 922 F.2d 880, 887 (1st Cir. 1990) (characterizing predicted compliance as critical release component); *United States v. Hir*, 517 F.3d 1081, 1092 (9th Cir. 2008) (noting the "critical flaw" in a set of proposed release conditions: "In order to be effective, they depend on [the defendant's] good faith compliance."); *id.* at 1093 n.13 (observing

that, barring a "replica detention facilit[y]," the success of any condition combination necessarily "hinge[s] on [the defendant's] good faith compliance").

Evidence rules do not apply to detention hearings. 18 U.S.C. § 3142(f). The focus is simply evidentiary reliability and accuracy. *See, e.g.*, *United States v. Webb*, 149 F.3d 1185 (Table), No. 98-1291, 1998 WL 381686, at *1 (6th Cir. June 22, 1998). Given hearing informality, the Court properly considers a wide range of proof. The nature and quality of proof, though, impacts its probative value and weight in the detention calculus. The § 3142(g) factors ultimately drive the overarching analysis.

## II.  ANALYSIS

Hensley rebutted the presumption as to both risk of nonappearance and risk of danger. The United States did not establish by a preponderance of the evidence that no combination of conditions can reasonably assure that Hensley will not appear at the proceedings in this case, so it did not overcome its burden on the issue of nonappearance. However, the United States met its burden as to risk of danger because it established by clear and convincing evidence that no conditions can reasonably assure community safety if Hensley were to be released. As such, the Court grants the United States' motion for detention.

### A.   RISK OF NONAPPEARANCE

As a threshold matter, the Court finds that Hensley put forth sufficient evidence to overcome the presumption as to risk of nonappearance by demonstrating that Hensley has a strong connection to the community and a close relationship with his family. Specifically, Hensley asserted by proffer that he lives in a house with his significant other in Estill County, which is close to his child's maternal grandparents, and that his eight-year-old child spends a significant amount of time with Hensley there. [Hearing Record at 14:15 – 15:25]. Hensley also asserted that he has been on pretrial release for the underlying state charges associated with this matter for more

3

than two years, and although he failed to appear for a court proceeding in 2021, he did so by accident and turned himself in when he realized the mistake. [Hearing Record at 17:10 – 17:55]. These facts are sufficient to overcome the light presumption burden. *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010) (discussing that the presumption imposes on the defendant a threshold "burden of production"; in response, "he must introduce at least some evidence" that he poses neither a flight nor a danger risk).

In response, the United States argued that Hensley still posed a risk of nonappearance primarily because he has demonstrated an inability to comply with pretrial-release conditions imposed upon him in state court. [Hearing Record at 30:20 – 30:45]. Specifically, the United States noted that Hensley was charged with theft by unlawful taking for shoplifting while on pretrial release in 2021. [*Id*.]. In addition, the United States noted that Hensley is unemployed. [*Id*. at 20:15 – 29:25].

The Court finds that, despite these facts, the United States did not prove by a preponderance of the evidence that Hensley poses a risk of flight or nonappearance. Hensley appears to have lived in Kentucky for his entire life, [Pretrial Services Report ("PSR") at 1-2], and his family connections remain there. [Hearing Record, at 14:15 – 15:25]. He does not possess a passport and has never travelled outside the United States. [PSR at 2]. More importantly, Hensley has remained on pretrial release from the state-court charges underlying the instant matter for more than two years. Although it appears a warrant was issued for Hensley after he missed a court proceeding, the Court perceives as genuine Hensley's representations that his failure to appear was an accident. As such, it is possible for the Court to craft conditions, such as electronic monitoring and home detention, that would mitigate any risk of nonappearance. Accordingly, detention based on Hensley's risk of flight or nonappearance at the proceedings in this matter is not justified.

4

**B.     RISK OF DANGER**

Although the United States failed to overcome its burden with respect to Hensley's risk of flight or nonappearance, the Court finds that detention is required based on Hensley's risk of danger to the community. Initially, Hensley's presentation of proffer, primarily through the PSR, rebutted the presumption as to his risk of danger. Aside from the instant offense, the PSR reflects someone with almost no criminal history, no history of violence, and at least some period of employment. [PSR at 2-4]. Nonetheless, due to the nature and circumstances of the current charges and the significant risk of danger such criminal conduct poses to the community, the Court finds that no set of conditions would sufficiently mitigate the risk of danger to the community posed by Hensley's release. As such, the United States has shown by clear and convincing evidence that danger-based detention is required.

1.     **Nature and Circumstances of the Offense**

The first BRA factor is the "nature and circumstances of the offense charge, including whether the offense . . . involves . . . a controlled substance [or] firearm[.]" 18 U.S.C. § 3142(g)(1). The nature and circumstances of Hensley's current charges—possession with intent to distribute a large quantity of highly pure methamphetamine, coupled with the possession of a large number of firearms—are serious and strongly favor detention.

At the detention hearing, the United States' witness, Drug Enforcement Administration ("DEA") Task Force Officer Scott McIntosh, testified to the circumstances underlying Hensley's charges. On September 18, 2020, Madison County law enforcement executed a search warrant on an apartment in which Hensley resided and uncovered approximately 700 grams of 98-percent pure methamphetamine, approximately one pound of marijuana, over 20 suspected Xanax tablets,

5

over a dozen firearms,[1] including an AK-47 and an AR-15, approximately $8,000 in cash, and digital scales. [Hearing Record at 21:20 – 22:48; PSR at 3-4].

Trafficking methamphetamine is an exceptionally dangerous offenses that poses a serious risk of harm to the community. *See Stone.*, 608 F.3d at 947 n.6 ("And our Court routinely affirms, on dangerousness grounds, the pre-trial detention of run-of-the-mill drug dealers, even without any indication that the defendant is engaged in violence . . . . To be sure, drug trafficking is a serious offense that in itself, poses a danger to the community."). "Congress has already determined that this is a serious charge which should trigger a statutory presumption of detention." *United States v. Cruz-Hernandez*, 422 F.Supp.3d 157, 160 (D.D.C. 2019). And as noted, the detention presumption stemming from that charge does not vanish, even where, as here, the defendant overcomes the initial presumption that he poses a danger to society. *Stone*, 608 F.3d at 945. Given both the quantity and high purity of the methamphetamine, coupled with the large number of firearms found in Hensley's possession, the court has no trouble concluding the nature and circumstances of the offense charged is serious. *See* § 3142(g)(1) (providing that the Court must consider the nature and circumstances of the offense charged, including whether the crime involves controlled substances or firearms; this case involves both). Accordingly, the first factor weighs strongly in favor of detention.

### 2.  **Weight of the Dangerousness Evidence**

The second factor gauges "the weight of the evidence against the person." 18 U.S.C. § 3142(g)(2) (directing courts to consider "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community

---

[1] Although the exact number of firearms found in Hensley's possession was never elicited at the detention hearing, the forfeiture allegations in the indictment list sixteen firearms. [DE 1, Page ID# 2-3].

ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings" and whether, at the time of the current offense the person was on probation or pretrial release). "This factor goes to the weight of evidence of dangerousness, not the weight of the evidence of defendant's guilt." *Stone*, 608 F.3d at 948.

Overall, Hensley's criminal history would suggest the current charge is an outlier. Prior to his arrest in September 2020, Hensley's only prior charges were for traffic citations. The crux of the dangerousness, thus, turns on the allegations at issue. The Court fully acknowledges that Hensley is presumed innocent of the charges. 18 U.S.C. § 3142(j). Yet, at the detention hearing, the record was uncontested concerning the volume of criminal evidence found at Hensley's residence. The Court can far from ignore not only the volume of methamphetamine at issue, but its quality. The apartment also contained digital scales, further indicating the narcotics were likely to be cut with other agents, packaged, and sold in the future. *Stone*, 608 F.3d at 947 n.6 ("And our Court routinely affirms, on dangerousness grounds, the pre-trial detention of run-of-the-mill drug dealers, even without any indication that the defendant has engaged in violence . . . To be sure, drug trafficking is a serious offense that, in itself, poses a danger to the community."). In addition to the volume and quality of methamphetamine found, the Court also cannot ignore the sheer number of firearms found on the scene. *United States v. Flowers*, No. 3:05-CR-72, 2005 WL 1981364, at *4 (E.D. Tenn. Aug. 17, 2005) (observing that the "sale of drugs [ ] establish[es] a significant danger" and "[t]he addition of guns to the equation" would only increase it); *United States v. Taylor*, 289 F. Supp. 3d 55, 64 (D.D.C. 2018) (observing that "the combination of the distribution of drugs and the illegal possession" of firearms presented a serious danger to the community). And the Court has yet to add the discovered Xanax pills, marijuana, cash, and drug paraphernalia also found at the residence.

In the end, the evidence suggests a large drug trafficking operation being operated from Hensley's residence. Although Hensley has no prior criminal history, the unique facts here land in favor of detention for this factor.

### 3.     **History and Characteristics**

The third BRA factor considers the history and characteristics of the defendant. 18 U.S.C. § 3142(g)(3) (directing courts to consider "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings" and whether, at the time of the current offense the person was on probation or pretrial release).

As mentioned above, this factor does not initially give the Court much concern. Setting the current charges aside, Hensley does not have a significant or lengthy criminal history record. Although Hensley was convicted of theft by unlawful taking while on release pending his underlying state charges, he had received only three minor traffic violations until his arrest for the instant charges in September of 2020. 18 U.S.C. § 3142(g)(3)(B). Moreover, while Hensley's PSR reflects a failure to appear for a court proceeding concerning a traffic citation, that charge occurred more than six years before the current charges. And the Court perceives as genuine Hensley's representations that his failure to appear for a court proceeding in 2021, which resulted in a bond violation warrant being issued, was an accident and not intentional.

Further, Hensley appears to have a strong connection to his mother, child, and his significant other. Although Hensley indicated that he had used methamphetamine at least a handful of time preceding his arrest for the instant offense, there is no indication that he has continued to do in the two years since that time. And, significantly, his recent relocation to Estill County indicates that he has removed himself from the community in which he allegedly

8

committed the instant offenses and has made himself more available to care for his child. Considering all this evidence, the third factor weighs in favor of release.

### 4. Nature and Seriousness of the Danger Risk

The fourth and final factor is "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4). This factor favors detention.

As the Court noted above, the danger to the community that would be posed by Hensley's release is great. The nature of the potential danger associated with the continuance of methamphetamine trafficking is incredibly significant, as the introduction of drugs into the community can cause serious harm to both users and innocent individuals. *See, e.g., United States v. Flowers*, No. 3:05-CR-72, 2005 WL 1981364, at *4 (E.D. Tenn. Aug. 17, 2005) (observing that the "sale of drugs [ ] establish[es] a significant danger"); *United States v. Pina-Aboite*, 97 F. App'x 832, 836 (10th Cir. 2004) ("[T]he danger-to-the-community factor is not simply about physical violence; the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the community[.]"). The Bail Reform Act demonstrates Congress's intent to equate drug trafficking with dangerousness. *United States v. Strong*, 775 F.2d 504, 506 (3d Cir. 1985) ("The statutory language, as well as the legislative history, [of the Bail Reform Act] unequivocally establishes that Congress intended to equate traffic in drugs with a danger to the community.").

Here, the facts indicate that Hensley was, at least at some point in time, deeply invested in the trafficking of drugs. Hensley is charged with both possession with intent to distribute approximately 700 grams of methamphetamine with a purity level of 98 percent and the possession of sixteen firearms in furtherance of a drug-trafficking crime. As already discussed, the quantity and purity of the methamphetamine seized suggests a serious drug trafficking operation. *Cruz-Hernandez*, 422 F.Supp.3d at 162 (noting that 230 grams of methamphetamine with purity levels

9

of 96-98 percent, found in conjunction with scales, packaging material, and a large amount of money, "suggest the sale and trafficking of drugs, not personal use"). In addition to the methamphetamine and large collection of firearms, law enforcement also uncovered digital scales, approximately one pound of marijuana, 20 Xanax pills, and approximately $8,000 in cash.

The Court takes note of the fact that Hensley has remained on pretrial release for over two years without any indication that he has continued to traffic drugs. However, based on the incredibly concerning nature of the drug trafficking in which Hensley allegedly intended to engage, the Court cannot be reasonably assured that Hensley will not resume involvement with drug trafficking if his release is continued. "[T]he danger-to-the-community factor is not simply about physical violence; the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the community[.]" *United States v. Pina-Aboite*, 97 F. App'x 832, 836 (10th Cir. 2004); *See United States v. Santiago-Pagan*, No. 1:08-CR-0424-01, 2009 WL 1106814, at *7 (M.D. Pa. Apr. 23, 2009) (concluding that the defendant's alleged involvement in the distribution of "a large quantity of narcotics cuts strongly against his motion for release pending trial" because "[t]he seriousness of the crimes alone . . . allows the court to draw the inference that defendant will simply continue his alleged narcotics activity if released"). Put another way, the Court believes there is no condition or combination of conditions that can ensure community safety if Hensley were to be released pending trial. *See, e.g.*, *United States v. Nova*, No. CR 16-060-02 S, 2016 WL 6471205, at *2 (D.R.I. Nov. 1, 2016) (finding that electronic monitoring and home detention conditions would not be effective to mitigate danger where the defendant could easily participate in the charged drug distribution scheme from his home). The allegations against him are simply too serious. Accordingly, this factor weighs decisively in favor of detention.

## I.     CONCLUSION

On balance of the § 3142(g) factors, the Court finds that the United States proved by clear and convincing evidence that Hensley poses a danger to the community that cannot be mitigated with conditions of release. Therefore, the BRA requires that Hensley remain in detention pending trial.

Accordingly, the Court grants the United States' oral detention motion. The parties may appeal this Order under the terms of 18 U.S.C. § 3145(a).

Entered this 23rd day of August, 2022.

*/s/ Matthew A. Stinnett*
MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY